THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: September 27, 2017

Beth E. Hanan
United States Bankruptcy Judge



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re

    Michael L. Van Eperen,                          Case No. 16-26758-beh

                Debtor.                            Chapter 7

    Michael L. Van Eperen,

                Plaintiff.

v.                                                           Adv. No. 16-2412-beh

    Baycare Health System,

                Defendant.

**DECISION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT
TO DEFENDANT BAYCARE HEALTH SYSTEM**

      Plaintiff-debtor Michael L. Van Eperen brought this adversary complaint under section 522(h) of the Bankruptcy Code which allows a debtor to "avoid the transfer of property of the debtor" if, among other things, the trustee could have avoided the transfer. Van Eperen asserts that his garnished wages were a preferential transfer under 11 U.S.C. section 547(b). The parties frame the issue as one of timing: whether a transfer occurred when the funds were taken

from Van Eperen's paycheck, or at a later moment, when the funds were received by the defendant-creditor, Baycare Health Systems. *See* 11 U.S.C. § 547(b). Van Eperen filed his chapter 7 bankruptcy case after his employer withheld some funds from his paycheck pursuant to a garnishment order, but before his employer conveyed all the funds to Baycare.

This court has jurisdiction under 28 U.S.C. section 1334 and this is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(F). This decision constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

Although the parties have not styled their briefs as motions for summary judgment, that is what the court understands both parties to seek, as the parties have submitted stipulated facts to the court and agreed that the resolution of this case requires a determination of law, rather than fact. *See, e.g., In re Ljubic,* 362 B.R. 914, 921 (Bankr. E.D. Wis. 2007) ("Although the creditor has not moved for summary judgment, the stipulated facts and arguments of counsel satisfy the court that the creditor is entitled to judgment as a matter of law."); FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056 (summary judgment is required if the movant is entitled to judgment as a matter of law).

## Statement of Facts

Baycare obtained a civil judgment against Van Eperen in Manitowoc County Circuit Court on April 6, 2016. *See* CM-ECF, Doc. No. 18, ¶ 1. After obtaining the judgment, Baycare began an earnings garnishment action against Van Eperen and his employer, RaiseRite Concrete. *Id.,* Doc. 18-1*; see* Wis. Stat. §§ 812.30 *et seq.* Baycare retained Certified Recovery Inc. (CRI) to assist in bringing the garnishment action and collecting. CM-ECF, Doc. No. 3, ¶¶ 8-10; Doc. No. 3-1. Three deductions from Van Eperen's earnings occurred within the preference period, 90 days before or on the petition date. 11 U.S.C. § 547(b)(4)(A). These three deductions totaled $784.25. CM-ECF, Doc. No. 18, ¶¶ 2-3, 9.

The garnishee-employer took the third payroll deduction of $242.02 on July 1, 2016, at 9:00 a.m. or earlier, when Van Eperen's paycheck became available to him. CM-ECF, Doc. No. 18, Ex. 2-3. Van Eperen filed his bankruptcy case later that same day. Case No. 16-26758, CM-ECF, Doc. No. 1. Several months later, at a pretrial conference, the court approved Baycare's request to cash one of the checks it had received, a request not opposed by counsel for Van Eperen. *See* CM-ECF, Doc. No. 6. The court and parties understood that pending resolution of the underlying transfer issue, cashing of the check would not constitute an actionable violation of the automatic stay or discharge injunction. *See* 11 U.S.C. §§ 362(k), 524(a).[1]

The sum of the three deductions from Van Eperen's paychecks exceeds $600.00, the threshold amount to constitute a preferential transfer. *See* 11 U.S.C. § 547(c)(8). Van Eperen (ultimately) scheduled and exempted the transfers and the trustee has not attempted to avoid them.[2] CM-ECF, Doc. No. 18, ¶¶ 10, 11.

---

[1] *See, e.g.*, *In re Williams*, No. 96-37172-WHB, 1997 WL 252649, at *2 (Bankr. W.D. Tenn. Apr. 24, 1997) (although a post-filing deposit was a technical violation of the automatic stay, the violation was deemed unintentional, while not precluding an avoidance action).

[2] Upon the court's review post-briefing, it found that the debtor neither scheduled nor exempted the alleged preferential transfers, and that the chapter 7 trustee never abandoned the transfers. *See* Case No. 16-26758, CM-ECF, Doc. No. 7, at 3–9. Moreover, the debtor originally failed to list the preferential transfers on his statement of financial affairs. The debtor answered "No" to question 6, which asks, "During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?" *Id.* at 36. The debtor also answered "No" to question 10, which asks, "Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, *garnished*, attached, seized, or levied?" *Id.* (emphasis added). The debtor's failure to schedule properly the preferential transfers raised a potential issue of standing. In addition, the court could not be sure that the trustee actually knew about the transfers due to the debtor's failure to list properly the transfers in his schedules. Consequently, the court held another status conference with counsel, and allowed the debtor time to amend his schedules, the trustee to object, and Baycare to amend its response if necessary. The debtor amended his schedules on June 9, 2017. On August 8, 2017—only after the court issued an order of possible future dismissal for lack of prosecution—Van Eperen filed an amended statement of facts with exhibits, with which Baycare did not disagree, although it suggested an addition to the statement. *See* CM-ECF, Doc. Nos. 18, 21.

Exhibits supplied by the parties provide the following dates and amounts:

| Pay period | Pay date | Amt. Garn. | Date Rec'd by CRI |
|---|---|---|---|
| 5/15-28/16 | 6/3/16 | $283.12 | (not in record) |
| 5/29-6/11/16 | 6/17/16 | $259.11 | 6/20/16 |
| 6/12-25/16 | 7/1/16 | $242.02 | 7/5/16 |
| | TOTAL | $784.26 | |

CM-ECF, Doc. Nos. 3 & 3-1; Doc. No. 18-2.

The record is unclear as to when Baycare received the funds garnished from the debtor's first preference period paycheck, dated June 3, 2016. At the initial pretrial conference, counsel for Baycare stated that the defendant had just received the "last" check for $283.12 (which appears to be the June 3 garnishment), within the two weeks prior to the hearing. *See* CM-ECF, Doc. No. 5 (audio recording). The parties' statement of facts also asserts, somewhat vaguely: "The third check was finally received and negotiated by the Defendant after the date of commencement of this adversary proceeding [10/17/2016] as well as after the bankruptcy discharge [10/19/2016]." CM-ECF, Doc. No. 18, ¶ 12. Both the June 17 and July 1 garnishments were received by July 5, 2016, months before this adversary was filed, suggesting that the June 3 garnishment was the payment received in the November/December time period. The reasonable inference is that Baycare received *two* garnishment checks post-petition—from the debtor's June 3 *and* July 1 paychecks—not one check, as the parties imply in their several briefs.[3] In either event, as will be shown, the court's ruling is the same.

---

[3] This reasoning also is supported by Van Eperen's assertions that his employer violated the Wisconsin garnishment statute by withholding the "last" garnishment check beyond the time allowed by law (*see* CM-ECF, Doc. No. 8 at 1-2, Doc. 10 at 1)—which is five to ten business days, per Wis. Stat. § 812.39. The record evidence shows the delays between payroll deduction and conveyance to the creditor for the June 17 and July 1 paychecks were three and four calendar days. The court declines to rule on Van Eperen's undeveloped claim in his brief regarding his employer's alleged violation of state law, in part because any determination on that matter is unnecessary for the court to decide the voidable transfer question the parties present under bankruptcy law. *See also Schlesner v. United States,* 246 F. Supp. 2d 1036,

## The Parties' Arguments

Van Eperen seeks to have an aggregate of $784.26 garnished from three paychecks returned to him as preferential transfers. 11 U.S.C. § 547(b). Baycare argues that because at least one payment was conveyed to the creditor after the petition date, it is not a voidable transfer but rather is property of the estate and should be remitted to the debtor. CM-ECF, Doc. No. 9, at 5. As a consequence of that remittal, Baycare contends that the monetary threshold defense of section 547(c)(8) applies, entitling it to retain the preferential funds received pre-petition, because they do not total $600.00.

Section 101(54) of the Bankruptcy Code provides that "transfer" means:

(A) the creation of a lien;
(B) the retention of title as a security interest;
(C) the foreclosure of a debtor's equity of redemption; or
(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with –
  (i) property; or
  (ii) an interest in property.

Section 547(b) of the Code imposes several requirements for a payment to be deemed a preferential transfer:

[T]he trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
  (A) on or within 90 days before the date of the filing of the petition; . . .
  [and]
(5) that enables such creditor to receive more than such creditor would receive if—
  (A) the case were a case under chapter 7 of this title;
  (B) the transfer had not been made; and
  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Also, section 547(e) provides:

(2) For purposes of this section, . . . a transfer is made –

---

1042–45 (E.D. Wis. 2003) (concluding that section 812.32 et seq. gives creditors, but not debtors, a cause of action against garnishees for failure to pay over funds to creditors).

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B); . . .
> (3) For purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

Section 547(c)(8) permits a defense to the avoidance of the transfer, if "the aggregate value of all property that constitutes or is affected by such transfer is less than $600.00." The trustee (or debtor) has the burden of proof under section 547(b) and the creditor has the burden of proof under section 547(c). 11 U.S.C. § 547(g).

Here, the parties do not dispute that funds both deducted and received by Baycare pre-petition meet all the requisite elements and thus are "transfers" subject to avoidance under section 547(b). Van Eperen and Baycare agree that as to the payroll deduction(s) received post-petition, the first three elements of section 547(b) are met. They agree that the funds were withheld for the benefit of a creditor, on account of an antecedent debt owed by Van Eperen before the transfer was made, while Van Eperen was insolvent.

Van Eperen and Baycare disagree as to whether the fourth element is met; they ask the court to decide whether the intervening delay in conveyance of the funds to CRI/Baycare affects the date of the transfer under section 547. The answer to that question is affected by the interplay of the Wisconsin earnings garnishment statute, Wis. Stat. §§ 812.30 *et seq.*:

> 812.35 Commencement of action. (1) To commence an earnings garnishment proceeding, the judgment creditor shall file with the clerk of courts a garnishment notice under s.812.44(2).
> …
> 812.37 Debtor's answer. (1) except as provided in s.812.34(1), the debtor may claim an exemption under s.812.34(2)(b) or a limit to the garnishment under s.812.34(2)(c), or may assert any defense to the earnings garnishment, by completing the answer form and delivering or mailing it to the garnishee. The debtor or debtor's spouse may file an answer or an amended answer at any time before or during the effective period of the earnings garnishment.
> (2) Whenever the garnishee receives a debtor's answer or amended answer, the garnishee shall mail a copy of the answer to the creditor by the end of the 3rd business day after receiving the debtor's answer, writing on that copy the date of receipt of the answer by the garnishee.

> (3) Unless served with an order of the court directing otherwise, in determining whether to pay any part of the debtor's earnings to the creditor, the garnishee shall accept as true and binding any exemption claimed in the debtor's answer or any amended answer received before payment is made to the creditor under s.812.39(1).
>
> …
>
> 812.39 Payment to creditor. (1) Between 5 and 10 business days after the payday of each pay period in which the debtor's earnings are subject to the earnings garnishment, the garnishee shall pay the creditor that portion of the debtor's nonexempt disposable earnings to which the creditor is entitled.

Van Eperen argues that despite the delay in transmitting some of the funds from his employer, RaiseRite, to CRI/Baycare, each "transfer" occurred within the preference period. Without citing specific provisions of the Wisconsin earnings garnishment statute, Van Eperen first contends that "the usual analysis for timing of a voluntary transfer is when the transfer is no longer reversible . . . (but) . . . (b)ecause the garnishment process is involuntary, the plaintiff relies on the principle of a 'taking' to define the time of the transfer." Van Eperen's "taking" argument is undeveloped, and thus unpersuasive. *See Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.") (internal quotations omitted). Van Eperen then looks to *In re Deardorff,* 195 B.R. 904 (Bankr. W.D. Wis. 1996), to urge that at the time his wages were earned and garnished, each deduction "was entirely out of his hands—as was the negotiability of the check." According to Van Eperen, the third transfer was complete on July 1 at 9:00 a.m. or earlier, and so within the preference period. Consequently, he asserts, the full value of the three paycheck deductions—June 3, June 17, July 1—should be returned to him as preferential payments. He argues further that a bright line rule, such as "transfer occurs at the time funds are deducted from a paycheck," would enhance reliability and avoid potential confusion when a garnishee-employer delays one or more days in forwarding the deducted funds to the creditor.

In contrast, Baycare argues that the gap of days between the pre-petition deduction from Van Eperen's paycheck and Baycare's post-petition receipt of the funds means the July 1 garnishment, at least, was not a preference-period transfer. Under Baycare's logic, funds received post-petition became property of the estate and should be returned to the debtor. As a consequence of remitting the post-petition payment(s) to the estate, Baycare argues that it may retain any pre-petition garnishment payments because their aggregate value does not total $600.00. *See* 11 U.S.C. § 547(c)(8).

In support, Baycare first asserts that to determine whether a transfer has occurred under section 101(54)(D) of the Code, the court must consider the specific Wisconsin earnings garnishment statute. Looking to Wisconsin Statute section 812.39(1), Baycare notes that Wisconsin garnishee-employers are not required to turn over the deducted payroll funds to the creditor immediately. Baycare also relies on *Barnhill v. Johnson*, 503 U.S. 393 (1992), where the United States Supreme Court held that, for purposes of payment by ordinary check, a transfer under section 101(54) occurs on the date the check is honored by the drawee bank and not before. *Barnhill* observed that up until the check was honored, the debtor still had a measure of control to cancel the check, or his bank account could be garnished leaving funds unavailable, or the bank might mistakenly refuse to honor the check. *Id.* at 399, 400–01, & n.7. Even considering that 11 U.S.C. section 101(54)(D) includes "conditional" modes of disposal of property, the *Barnhill* Court ruled that the creditor received no interest in the debtor's property (the ordinary check) until the bank honored it.

Baycare concedes that in the case of earnings garnishment in Wisconsin, *Barnhill* does not supply an exact analogy and the garnishment check need not be cashed for a transfer to occur. But, Baycare says, the garnished funds at least must have been conveyed to the creditor to be deemed transferred. CM-ECF, Doc. No. 9 at 5. Baycare also critiques Van Eperen's policy arguments

about the benefit of a bright line, transfer-at-paycheck rule, because such a rule could make a creditor liable for money it had never received and might not receive in the future.

In reply, Van Eperen acknowledges that the earnings garnishment statute permits a debtor to claim an exemption or assert a defense which may prevent or delay the garnishee-employer from deducting funds from the debtor's payroll, but no answer was lodged here. *See* Wis. Stat. § 812.37; CM-ECF, Doc. No. 10 at 1.

## Discussion

The purpose of the preference statute is to eliminate the potential incentive for creditors to race to collect monies owed them when a debtor begins to struggle. *In re OneStar Long Distance, Inc.*, No. 16-1940, 2017 WL 4216240, at *6 (7th Cir. Sept. 22, 2017). The preference statute facilitates the prime bankruptcy policy of equality of distribution among a debtor's creditors. *See* 2 COLLIER ON BANKRUPTCY 547.01 (15th ed. Rev. 2003); 11 U.S.C. § 547(b). What constitutes a transfer and when it is complete is a matter of federal law. *Barnhill,* 503 U.S. at 397–98 (citing *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70 (1945)). But what constitutes a property interest is a question of state law, *Barnhill,* 503 U.S. at 398, and the effect of a writ of garnishment is determined by the laws of the state in which the writ issues. *In re Saults,* 293 B.R. 739, 749 n.4 (Bankr. E.D. Tenn. 2010).

Both parties agree that Van Eperen lacked a transferrable interest in his paychecks until he earned them. *See* 11 U.S.C. § 547(e)(3). They cite *In re Deardorff,* 195 B.R. 904 (Bankr. W.D. Wis. 1996), where the court considered whether a preferential transfer occurred when the garnishment order was entered or later, when the debtor earned the wages subject to the order. *Deardorff* acknowledged that a Seventh Circuit decision applying Indiana state law had concluded that a debtor's rights in his garnished earnings were transferred at the point the garnishment order was entered—creating a lien on

his future wages—and not thereafter when he actually earned the wages. *In re Coppie,* 728 F.2d 951, 952 (7th Cir. 1984). *Deardorff* also considered that *Barnhill* likely impaired the *Coppie* holding. *See* 503 U.S. 393, 397 (explaining that what constitutes a transfer and when it is complete for preference purposes, is a matter of federal law). *And see In re Freedom Group, Inc.,* 50 F.3d 408, 412 (7th Cir. 1995) (assessing that earlier cases holding that a transfer occurs when a notice of garnishment is served did not survive the *Barnhill* decision).

Even if *Coppie* remained binding precedent within this Circuit, *Coppie* limited itself to an interpretation of Indiana law. *Coppie,* 728 F.2d at 953. Consequently, *Deardorff* held that:

> until the debtor performed the services necessary to earn his wages, he truly had nothing more than the *expectation* that he would receive them in the future. The debtor had no right to claim those funds until he earned them, and thus could not "transfer" them until that time. . . . Once the debtor earned the wages and gained the "right" to those funds, the lien attached. Under § 547(e)(3), the transfer occurred at that time as well.

195 B.R. at 910–11.[4] *Deardorff* was focused, for purposes of section 101(54)(D)(ii), on when the debtor's interest in property arose and, specifically, whether a debtor could transfer a property interest in wages before those wages were earned (*i.e.*, when the state court garnishment summons was served). The *Deardorff* court did not have to decide whether funds deducted pre-petition, but paid post-petition, were avoidable transfers.

---

[4] *Deardorff* describes a garnishment summons as creating an "equitable lien" that attaches when wages are earned, and section 101(54)(A) includes "the creation of a lien" in the definition of a transfer. Neither party here has argued that the court should rely on section 101(54)(A), and both cite to section 101(54)(D) in asking the court to determine when a transfer was made. Nevertheless, to the extent that section 101(54)(A) applies, the court finds persuasive the argument in *In re Cronk*, No. 14-64115, AP No. 14-6220-TMR, 2015 WL 5673120, at *2 (Bankr. D. Or. Sept. 25, 2015), that such a "lien," if created at the time wages were deducted, was not a preferential transfer because it did not enable the creditor (here, Baycare) to receive more than it would have received in a chapter 7 case if the lien had not been created.

Given the limited holding of *Deardorff*, Baycare asserts that an earnings garnishment transfer is not complete until the creditor receives the withheld funds from the garnishee-employer, citing Wis. Stat. § 812.39(1) (garnishee must wait five to ten business days before paying creditor). Van Eperen and Baycare cite no other Seventh Circuit authority, and the court has identified none, bearing on the question at hand.[5] *Coppie*, limited as it is to interpretation of Indiana law, sheds no light on whether, under Wisconsin law, Van Eperen's July 1 payroll deduction was a transfer at the point it was earned and withheld, or only later, when his employer actually conveyed the funds to CRI/Baycare.

One month after *Deardorff* issued, another court in the Western District of Wisconsin considered whether wages earned pre-petition that are subject to a garnishment lien may be captured post-petition without violating the automatic stay. *In re Koch*, 197 B.R. 654, 659 (Bankr. W.D. Wis. 1996). The *Koch* court assessed whether the debtor retained, if not a legal interest, an equitable interest in the garnished funds at the time he filed his bankruptcy petition. Citing the Wisconsin earnings garnishment statute but not *Deardorff*, *Koch* described that a creditor's lien does not arise and cannot attach until the debtor earns the wages. Once earned by the debtor, the statute effectively segregates the wages into monies owed to the debtor, and monies owed to the garnishment creditor. *Id.* at 659. *Koch* went on to explain that at that point, the debtor lacks a legal interest in the funds segregated for garnishment. But under the statutory scheme, the debtor retains an equitable interest in the funds segregated for garnishment because the debtor has the opportunity to file an answer or affirmative defense or

---

[5] The paucity of relevant cases is not surprising. Creditors often return garnishment payments they have received after a bankruptcy case has been filed, so cases like this do not arise often. *See, e.g., In re Bohanon*, No. 12-12582, Adv. No. 12-5181, 2013 WL 6355994, at *2 (Bankr. D. Kan. Dec. 5, 2013) (creditor returned checks it received post-petition to the employer, after receiving notice of the debtors' bankruptcy and before any demand for turnover by the trustee).

exemption.  *Id.* at 659, citing Wis. Stat. §§ 812.34(2)(b), 812.37(1).  This equitable interest is not extinguished until the right to contest the garnishment is extinguished, which can occur no earlier than five business days after the end of the pay period, per Wis. Stat. § 812.39(1).  In *Koch*, the debtor retained an equitable interest in his garnished wages on the day he filed his bankruptcy case, and so his interest in those wages became property of the estate under 11 U.S.C. section 541(a)(1).  197 B.R. at 660.  *Koch* held that the creditor had a duty to stop the garnishment proceedings once notified of the bankruptcy filing and to return to the estate any funds garnished in violation of the stay.  *Id.*

No recent Wisconsin cases cite *Koch* for its garnishment analysis.  Courts from other jurisdictions have considered whether a transfer is complete when the debtor's paycheck is garnished, or when funds are conveyed to the creditor, by consulting the requirements of the applicable state garnishment statute.  Results vary depending on the particular garnishment scheme.

For example, in *In re Stevens*, 552 B.R. 773, 779–80 (Bankr. D. Colo. 2016), the court concluded that, under Colorado law, a garnishment summons creates an inchoate lien that attaches to the debtor's wages at the time they are earned.  So, garnished wages earned before the preference period—even when *paid* to the creditor during the preference period—cannot result in avoidable transfers.  A Louisiana bankruptcy court reached a similar conclusion in *Matter of Kaufman*, 187 B.R. 167, 173 (Bankr. E.D. La. 1995).  There, the court relied on Louisiana law to conclude that the date of transfer in a garnishment situation is when wages are earned by the debtor, not when the checks are later conveyed to the creditor or cashed.  The court based its holding on a finding that, in a wage garnishment situation, "the debtor does not retain the ability to stop payment on the check until the very last. . . . Once the wages have been withheld by the debtor's employer pursuant to the garnishment, the debtor has no control over the funds."  *Id.* at 172.  *Kaufman's* assessment of a Louisiana debtor's lack of control over his funds

stands in contrast to the Wisconsin garnishment statute, and a Wisconsin debtor's ability to delay or stop payment to garnishment creditors by asserting an affirmative defense or exemption at any point in the garnishment proceeding.

Here, the Wisconsin earnings garnishment scheme means debtors retain a measure of control over, or equitable interest in, earned and garnished funds until the funds have been paid to the creditor. True, the *Koch* court suggested that the debtor's equitable interest lasted for only five business days:

> The debtor's equitable interest is not extinguished until the right to contest the garnishment is extinguished, which can occur no earlier than the time the garnishee is liable under the statute to turn over funds to the garnishor. In this case, that day was five business days after the end of the pay period . . . .

197 B.R. at 660 (citing Wis. Stat. § 812.39(1)). That aspect of *Koch* is subject to clarification. Section 812.37(3) instructs a garnishee to "accept as true and binding any exemption claimed in the debtor's answer or any amended answer received *before payment is made to the creditor*" (emphasis added), and the garnishment form instructs the garnishee: "If the debtor's answer form claims a complete exemption or defense, *do not* withhold or *pay to the creditor* any part of the debtor's earnings under this garnishment unless you receive an order of the court directing you to do so." Wis. Stat. § 812.44(3), ¶ 4 (emphasis added).

Read together, these provisions indicate that the debtor may stop a garnishee from paying deducted funds to a creditor by filing an answer at any time before the garnishee pays the funds to the creditor—even if the funds were deducted more than five to ten business days before the answer was filed. Accordingly, this court recognizes that a debtor's equitable interest in the garnished funds under Wis. Stat. § 812.32, *et seq.*, lasts until those funds have been paid to the creditor. And the garnishment form states that payment is complete upon mailing of the garnishment check. *See* Wis. Stat. § 812.44(3), ¶ 7. So, a transfer of wages garnished under the Wisconsin garnishment

statute does not take place for purposes of section 547(b) until the garnishee has paid—i.e., mailed—the funds to the garnishor-creditor.

The court's conclusion is bolstered by cases from other jurisdictions that focus on the amount of funds a creditor *receives* under the particular state garnishment scheme, and where the net amount can give rise to a section 547(c)(8) defense.

In *In re Pierce*, 504 B.R. 506 (B.A.P. 8th Cir. 2014), the debtor's employer deducted funds totaling $858.98 from the debtor's paycheck during the 90-day preference period. Only $562.78 of that amount was transmitted to the creditor. Under Nebraska law, the withheld wages first had to be transferred to the state court before delivery to the creditor. Consequently, the state court refunded to the debtor two checks totaling $296.20 that the state court had received after the bankruptcy case was filed. The B.A.P. reasoned that, "at one time all six wage garnishments, totaling $858.98, constituted preferences." *Id.* at 510. Specifically, "each garnishment was a preference at the time Pierce earned his wages." *Id.* But, the B.A.P. also determined that because the creditor did not receive at least $600 in the aggregate, the defense of section 547(c)(8) should apply. *Id.* An Eighth Circuit panel agreed. *See* 779 F.3d 814 (8th Cir. 2015). In doing so, the panel expressly rejected the debtor's argument that, because the garnished wages were transferred when earned, it was irrelevant that the creditor actually *received* less than $600. *Id.* at 818–19. Thus *Pierce* recognizes the time gap created by Nebraska law allowing for transfer of garnished funds to the court before conveyance to the creditor, which then gave rise to the section 547(c)(8) defense. *Pierce* is akin to *Koch's* recognition of the five to ten business day allowance in the Wisconsin statutory scheme.

In *Matter of Bohanon*, No. 12-12582, Adv. No. 12-5181, 2013 WL 6355994 (Bankr. D. Kan. Dec. 5, 2013), the court considered garnished wages earned and paid during the preference period ($544.35), plus garnished wages

earned during, but paid after, the preference period ($429.39). Because the creditor did not cash the check for garnished wages received after the petition had been filed, but instead returned it to the employer (leaving the creditor in possession of only $544.35), the court concluded that the defense of section 547(c)(8) must apply. *Id.* at *3–5. The *Bohanon* court bolstered its conclusion by noting that Kansas garnishment law excluded the second check as only a partial garnishment, given the bankruptcy stay. *Id.* at *3–4.

Under facts similar to those here, the court in *In re Cronk*, No. 14-64115, AP No. 14-6220-TMR, 2015 WL 5673120 (Bankr. D. Or. Sept. 25, 2015), considered three garnished paychecks of the debtor, only two of which were conveyed to the creditor before the debtor filed her bankruptcy case. The third garnished paycheck issued on the same day the petition was filed, and was returned to the debtor after the bankruptcy was filed. *Id.* at *1. Citing to *Barnhill,* the court concluded that because the third check was not presented to the creditor during the preference period, and the remaining two checks did not total $600, the defense of section 547(c)(8) applied. *Id.* at *3.

## Conclusion

In this case, the July 1 deduction of $242.02, earned and withheld within the preference period, was not conveyed to CRI/Baycare until July 5, 2016, after the petition had been filed. Even though Van Eperen did not lodge a defense or exemption to the garnishment complaint, under sections 812.37(3) and 812.39, Wis. Stats., he retained an equitable interest and ability to do so. Accordingly, Van Eperen's equitable interest in the July 1 deduction became property of the estate later that day, after he filed his bankruptcy petition. That deduction should be returned to the debtor.

The remaining deductions from the June 3 and June 17 paychecks total only $562.33, and when the aggregate amount is below $600.00 the defense of section 547(c)(8) applies. But because the record is not clear as to when the deduction from the June 3 paycheck actually was paid to Baycare/CRI (pre- or

post-petition), the court cannot determine the exact amount of the preferential transfers Baycare may retain, and conversely, the amount of debtor's interest that Baycare must return to the debtor.

Accordingly, the court ORDERS that Baycare's motion for summary judgment is GRANTED in part, and Van Eperen's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that the parties shall have 21 days from the date of this order to submit a stipulation agreeing to the total amount of funds conveyed to Baycare post-petition, and the dates on which they were conveyed. The court will enter judgment in accordance with the stipulation. If the parties fail to submit a stipulation resolving the amount at issue, the court will set the matter for an evidentiary hearing.

IT IS FURTHER ORDERED that the clerk docket a copy of this Decision and Order in Van Eperen's main bankruptcy case.

It is so ORDERED.

# # # # #